**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FRANCES SOMENSKI | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| JO ANNE B. BARNHART, Commissioner | : | NO. 05-3545 |
| of the Social Security Administration, | : | |
| | : | |
| Respondent | : | |

**MEMORANDUM**

Baylson, J.                                                                  February 28, 2006

Plaintiff Francis Somenski ("Plaintiff" or "Somenski") seeks judicial review of the

decision of the Commissioner of the Social Security Administration denying his claim for

disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-

433 ("the Act").  Presently before this Court are the parties' cross-motions for summary

judgment.

### I.        Background and Procedural History

Plaintiff was born on September 22, 1945, and is now 60 years old. (R. at 117).

Somenski is a high school graduate.  He was employed as a longshoreman for thirty years, which

required him to load and discharge cargo from vessels. (R. at 333).

Somenski last met the insured status requirements set forth in the Social Security Act on

June 30, 2002 ("date last insured"). (R. at 15).  He originally filed for Social Security disability

insurance benefits on or about August 25, 1997, alleging he became disabled on or about

September 24, 1994 due to anxiety and post traumatic stress disorder ("PTSD") resulting from a

work accident when he was exposed to oxygen deprivation and where two of his co-workers died. (R. at 153, 172-187, 327, 331).  He also asserted two work-related injuries in his legs contributed to his disability. (R. at 336).  After Plaintiff's claim was initially denied on November 12, 1997 (R. at 94), Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (R. at 101).  A hearing was held before ALJ William J. Reddy ("ALJ Reddy") on November 3, 1998 (R. at 49).  On December 6, 1998, the ALJ denied Plaintiff's claim (R. at 14-23), concluding although he could not perform his past relevant work as a longshoreman, he was not "disabled" within the meaning of the Act because he could perform certain other work in the national economy. (R. at 41-42).  The Appeals Council, however, vacated the decision of ALJ Reddy on September 29, 2000, remanding the matter for further action consistent with its opinion. (R. at 107-110).

The Appeals Council misplaced the Plaintiff's file for an extremely lengthy period, requiring him to enlist the assistance of Congressman Robert Brady's office on his behalf, which eventually on November 22, 2002  resulted in the Council ordering the ALJ to hold a new hearing. (R. at 111-114).  On April 29, 2004, almost four years after the original remand order, ALJ Reddy conducted a second hearing concerning the claim. (R. at 25, 70-89).[1]  On May 27, 2004, the ALJ again denied Somenski's application for DIB, concluding he was not "disabled" under the Act for similar reasons as were articulated in the first report. (R. at 14-23).  This time, the Appeals Council denied Plaintiff's request for review without comment (R. at 6), after which Plaintiff sought judicial review of the Commissioner's decision in this Court.  He filed a motion

---

[1]On July 10, 2003, the Office of Hearings and Appeals informed Somenski that the file had finally been located.  (R. at 115).

-2-

for summary judgment on November 23, 2005 (Doc. No. 8) and Respondent, the Commissioner of the Social Security Administration ("Commissioner"), filed a cross-motion for summary judgment on December 16, 2005 (Doc. No. 9).

A.    History of Treatment

Plaintiff asserts that he has been unable to work since September 24, 1994, due to an accident at work where he was employed as a longshoreman.  While supervising the unloading of lumber from a ship, he noticed a co-worker friend down "in the hole" was not moving.  When Somenski climbed down to investigate, he began to get dizzy and disoriented himself.  He was able to climb out but passed out.  He later learned his friend and another colleague died as a result of the incident. (R. at 153, 179-184).  Plaintiff also reports two other accidents at his job that contributed to his disability.  In 1987, a steel pipe slammed him into a wall, causing a vascular injury in his lower right leg. (R. at 193).  Then, in 1992, a pipe crushed his left leg. (R. at 194).  Somenski testified that he experiences recurrent flashbacks of his accident, anxiety, and depression since the work incident of September 24, 1994 and has virtually no social activities. (R. at 54-61, 80, 187-191, 331-39).  Additionally, Plaintiff testified that he experiences pain in his lower extremities that he attributes to the 1987 and 1992 incidents. (R. at 56, 73-75, 192-93).

After the September 1994 incident, Somenski followed up with his family physician, Dr. Peter Gross, asserting symptoms of nervousness, cold sweats, light-headedness, difficulty sleeping, visions of the accident and difficulty breathing. (R. at 186-188).  In December 1994, when his psychological symptoms continued, Somenski began psychiatric treatment with Dr.

George Bell, M.D. (R. at 188, 217).  Dr. Bell's treatment[2] consisted of psychotherapy, neuro-

psychological testing, and medication, (R. at 221, 223-31, 371), and he diagnosed that Somenski

was suffering from PTSD, anxiety, depression, and organic brain damage. (R. at 220, 229-230,

232, 371).  Further, Dr. Bell testified at a June 3, 1996 worker's compensation hearing that

Plaintiff was incapable of performing either past work or any other job due to concentration and

memory problems. (R. at 232-33).

As part of his treatment, Dr. Bell referred Plaintiff to a Dr. Terri Morris, Ph.D. a neuro-

psychologist, for a detailed evaluation of Plaintiff's cognitive deficits in August of 1995. (R. at

223).  Dr. Morris' "specialty is in providing . . . a very prolonged sensitive battery of testing for a

full two days . . . to see if in fact there was some documented memory loss." (R. at 224).  Dr.

Morris concluded, among other things that Plaintiff had "mild deficit" on tests of cognitive

flexibility and visual search, and "mild to moderate deficit on learning and recall for verbal,

visual and special stimuli." (R. at 227, 229).  In June 1997, Morris re-tested Somenski,

concluding that his "neuropsychological profile is again abnormal," evincing a decline in

attention, and slower thinking.  She noted that ongoing effects from PTSD and/or anoxia (oxygen

deprivation) were likely, and recommended a brain injury rehabilitation program. (R. at 360-61).

On January 28, 1998, Dr. Bell wrote a letter reiterating that Plaintiff suffers from

"classical PTSD as manifested by high level of anxiety, agitation and flashback" and "organic

---

[2]Treatment notes in the record reflect regular outpatient treatment from at least November 1996 to June of 1997, and additional treatment from February 2002 to November 2003 (R. at 16; 488-98), although Dr. Bell's testimony in June 1996 confirms he was in ongoing treatment at least every three to four weeks from December, 1994 until the time of testimony. (R. at 231). Additionally, Plaintiff testified he still saw Dr. Bell for treatment as of the April, 2004 hearing. (R. at 73, 76), reasonably suggesting he has been under Dr. Bell's care, at least intermittently, for ten years.

defects" resulting in "cognitive difficulties with accompanying lack of concentration."  He opined that he is "unable to be gainfully employed as a result of his condition."  (R. at 381-82). In September, 1998, he administered a "Medical Assessment of Ability to Do Work-Related Activities (Mental)," finding that Plaintiff had poor or no ability to deal with work stresses and maintain attention/concentration, fair ability to use judgment, handle complex instructions, behave in an emotionally stable manner, or relate predictably in social situations; and good or very good ability in most other areas. (R. at 17, 420-422).

In connection with his worker's compensation case, Plaintiff was examined by a number of psychiatrists and psychologists.  First, a Dr. Timothy Michals M.D., a  psychiatrist, examined Plaintiff at the request of Somenski's employer.  In June 1996, he testified that Plaintiff had no mental disorder which precluded work. (R. at 16, 274-75).

In March 1997, again at the request of Somenski's employer, Plaintiff underwent another psychiatric examination performed by Dr. John M. Henderson M.D., a forensic psychiatrist. After examining Plaintiff and administering multiple psychological tests, Dr. Henderson's report concludes that Somenski did not have PTSD, cognitive dysfunction, memory problems or organic brain damage, but did have other psychological disorders, including generalized anxiety disorder and several personality disorders. (R. at 16-17; 363, 429).

Next, in April 1997, at the request of a third party defendant, a Dr. Robert L. Sadoff M.D., yet another psychiatrist, examined Plaintiff for one and a half hours and reviewed some of his medical records.  He reported a diagnosis of PTSD, anxiety and cognitive problems, including memory loss and difficulty with concentration. (R. at 17, 418).  Dr. Sadoff recommended continued psychiatric treatment and vocational counseling (R. at 418-19).

After Somenski applied for Social Security Disability Benefits, he was subject to five additional consultative evaluations by state physicians, psychiatrists and psychologists.  Plaintiff was first referred to Dr. Norman Makous, M.D. from the Pennsylvania Bureau of Disability Determination, who after conducting a physical examination of Plaintiff in October 1997, diagnosed him with post hypoxemic central neurologic injury, status post traumatic compartment syndrome, right calf, traumatic arthritis proximal interphalangeal joints of fifth digits bilaterally, and status post traumatic laceration, left leg.  He concluded Somenski's exertional limitations left him capable of lifting no more than ten pounds occasionally, standing/walking less than two hours per eight hour workday, and performing postural activities no more than occasionally. (R. at 17, 364-369).

Next, in November, 2003, Dr. Edward Emmett, M.D., also from the Pennsylvania Bureau of Disability Determination, physically examined Somenski and concluded that Plaintiff had bilateral osteoarthritis of the knees; status post crush injury right calf, and anxiety possibly associated with PTSD.  He found no significant exertional limitations with respect to lifting, carrying, standing, walking, sitting, pushing or pulling, but was limited to occasional kneeling, crouching or climbing. (R. at 18, 474-76).

Also in November 2003, Dr. Joseph W. Slap, M.D., a psychiatrist from the Pennsylvania Bureau of Disability Determination, examined the Plaintiff.  He diagnosed him as having PTSD, adjustment disorder with depression, amnestic syndrome secondary to anoxia, entrapment-compartment syndrome, right leg arthritis and brain damage. (R. at 18, 484).   He opined that Somenski's social functioning is "impaired" and concentration were "severely impaired", with "extreme" restrictions in ability to remember, understand and carry out detailed instructions,

"marked" restrictions on simple work-related decisions, and "slight" restrictions on simple instructions. (R. at 18, 485-87).

Two reports assessing Somenski's ability to perform work-related tasks are also in the record. Mental Residual Functional Capacity Assessments and accompanying Psychiatric Review Techniques were completed by non-examining state agency psychologists L. Tlam, Ph.D. and R. Will, Ph.D. on October 27, 1997 and January 12, 1998, respectively. Dr. Tlam concluded Plaintiff has PTSD and brain impairment (with accompanying memory impairment, loss of IQ, motor difficulties and speed deficits), residual cognitive impairment and anxiety (including recurrent recollections of traumatic incident). (R. at 18-19, 385, 389, 391). He opined that while he has moderate limitations with detailed instructions and maintaining concentration for extended periods, he nonetheless could perform simple, routine, unskilled work. (R. at 18-19, 385). Dr. Will came to similar conclusions, reporting that Plaintiff has loss in memory and IQ, anxiety, and PTSD. He also opined that despite moderate limitations with instructions and concentration, and one or two episodes of decompensation, Somenski was capable of performing simple, repetitive work. (R. at 18-19, 403, 405-408).

### B. Other Opinions in the Record

In addition to medical documentation, the record includes a July 24, 1996 decision from U.S. Department of Labor ALJ Ralph Romano awarding Plaintiff temporary total disability benefits under the Longshoreman & Harbor Worker's Compensation Act, 33 U.S.C. § 901 *et. seq.* (R. at 132, 139). His decision was based on a hearing held on June 3, 1996, at which the Plaintiff, Dr. Bell and Dr. Michals testified, as well as other medical documents. (R. at 149-319).

ALJ Reddy also sought testimony from a vocational expert ("VE") at both the initial

hearing, held on November 3, 1998 and the most recent one, held on April 29, 2004.  At the November 1998 hearing, a Mr. Don Millen testified that Mr. Somenski could not perform his past relevant work as a longshoreman. (R. 65).  However, when posed a hypothetical limited to unskilled, simple, repetitive work with no exertional limitations, VE Millen testified that such occupations existed, such as a hand packager, laborer or gluer. (R. at 64-65).  He also concluded that if Plaintiff's testimony were fully credited and supported by medical evidence, Somenski would not be employable in the local and national economies. (R. 66, 85).  Mr. James Earhart is a VE who briefly testified at the April, 2004 hearing at the request of the ALJ, but offered no opinion as to employability. (R. 83-84).

### II.      Contentions of the Parties

In his Motion for Summary Judgment, Plaintiff asserts that the ALJ erred in failing to accord significant enough weight to the opinions of his treating physician, Dr. Bell. Additionally, he asserts the ALJ erred by failing to give any deference whatsoever to ALJ Romano's decision that Plaintiff was totally disabled.  Further, Somenski contends that it was an abuse of discretion to discredit Plaintiff's subjective complaints of pain and severe mental impairments, because they were amply supported by multiple medical authorities.  He thus argues that the ALJ's hypothetical to the vocational expert was insufficient.  (Pl.'s Mot. Summ. J. at 12-13).

The Commissioner counters that the ALJ evaluated all the evidence in the record, and had substantial evidence to conclude that the Plaintiff was not disabled.  First, she argues that the ALJ did not misapply the treating physician rule.  Instead, the ALJ properly attributed limited weight to the opinion of Dr. Bell, because it was inconsistent with reliable medical evidence in

the record, including the findings of the state agency psychological consultants.  Regarding the

opinion of ALJ Romano, the Social Security Regulations explicitly state that the decision of

another agency is not determinative of the question of whether or not an individual is disabled.

Also, the ALJ properly found Somenski's subjective complaints less than fully credible.

Regarding any physical impairment, the Commissioner argues the record lacked evidence of

medical treatment, physical therapy or prescription pain medication, and thus the ALJ had ample

reason to find the Plaintiff not fully credible.  Accordingly, the question posed to the VE fairly

set out all the limitations supported by the record. (Resp.'s Mot. Summ. J. at 10-16).

### III.    Legal Standard

The standard of review of an ALJ's decision is plenary for all legal issues.  Schaudeck v.

Comm'r of Soc. Sec. Admin., 181 F.3d 429, 421 (3d Cir. 1999).  The scope of the review of

determinations of fact, however, is limited to determining whether or not substantial evidence

exists in the record to support the Commissioner's decision.  Id.  As such, "[t]his Court is bound

by the ALJ's finding of fact if they are supported by substantial evidence on the record."

Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  Where "an agency's fact finding is

supported by substantial evidence, reviewing courts lack power to reverse . . . those findings."

Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1191 (3d Cir. 1986).  "Substantial evidence does

not mean a large or considerable amount of evidence but rather such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  Hartranft v. Apfel, 181 F.3d

358, 360 (3d Cir. 1999).

### IV.    Discussion

A.    The Five-Step Sequential Analysis of Disability

In order to establish a disability under the Social Security Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any "substantial gainful activity" for a statutory twelve month period. 42 U.S.C. § 423(d)(2)(A); Stunkard v. Sec'y of HHS, 841 F.2d 57, 59 (3d Cir. 1988).

To determine whether an individual is disabled, the regulations proscribe a five-step analysis. 20 C.F.R. § 404.1520(a); Ramirez v. Barnhart, 372 F.3d 546, 550-51 (3d Cir. 2004). The fact-finder must determine: (1) if the claimant currently is engaged in substantial gainful employment; (2) if not, whether the claimant suffers from a "severe impairment;" (3) if the claimant has a "severe impairment," whether that impairment meets or equals those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and thus are presumed to be severe enough to preclude gainful work; (4) whether the claimant can still perform work he or she has done in the past ("past relevant work") despite the severe impairment; and (5) if not, whether the claimant is capable of performing other jobs existing in significant numbers in the national economy in view of the claimant's age, education, work experience and residual functional capacity ("RFC"). Id. If there is an affirmative finding at any of steps one, two, four or five, the claimant will be found "not disabled." 20 C.F.R. § 404.1520(b)-(f). See also Brown v. Yuckert, 482, U.S. 137, 140-42 (1987). The Plaintiff carries the initial burden of demonstrating by medical evidence that he or she is unable to return to his or her former occupation. Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). Once the Plaintiff has done so, the burden shifts to the Commissioner to show the existence of substantial gainful employment the claimant could perform. Id.

B.    The ALJ's Conclusions

In reviewing the evidence in this case, the ALJ concluded that Plaintiff's mental

impairment is "severe" within the meaning of the Act, resulting in "moderate" restrictions in activities of daily living, "mild" difficulties in maintaining social functioning, "moderate" impairments in concentration, persistence or pace, and one or two episodes of decompensation. (R. at 21).  Additionally, he found that this condition was severe enough to keep Plaintiff from doing his past relevant work as a longshoreman, but that Plaintiff's complaints that these conditions were totally disabling were "not fully credible." (R. at 21).  Instead, the ALJ found that he still had the RFC to perform gainful employment at all exertional levels in simple, routine jobs with moderate limits in the ability to understand and carry out detailed instructions, maintain attention and concentration for extended periods, respond appropriately to changes in work settings, travel in unfamiliar places, and use public transportation. (R. at 20).  Further, the ALJ concluded that based on this RFC, as well as his age, education and work experience, Plaintiff is capable of performing other jobs existing in significant numbers in the national economy, including working as a conveyor feeder or store laborer. (R. at 21).  Therefore, Mr. Somenski was not "disabled" within the meaning of the Act. (R. 21-22).

   C.   Substantial Evidence Does Not Support the ALJ's Finding that Somenski was Not Disabled

In reviewing the ALJ's decision, the Court holds that the ALJ's findings were not based on substantial evidence.

   1.   *The ALJ discounted the treating physician rule.*

First, Plaintiff argues the ALJ erred in failing to accord significant enough weight to the opinions of his treating physician, Dr. Bell, instead giving too much weight to the contrary opinions of state agency psychologists who did not even examine Plaintiff. (Pl.'s Mot. Summ. J.

at 12-15).  The Commissioner counters that the ALJ properly attributed limited weight to the

opinion of Dr. Bell because it was inconsistent with reliable medical evidence in the record.

Here, the findings of the state agency psychological consultants and other examining physician

opinions contradict Dr. Bell as well as Drs. Morris, Slap and Sadoff.  Moreover, certain findings

in Drs. Sadoff and Slap's reports undermine their cognitive assessment findings. (Resp.'s Mot.

Summ. J. at 11-14).

The Third Circuit has repeatedly noted that "a cardinal principle guiding disability

eligibility determinations is that the ALJ accord treating physicians' reports great weight,

especially when their opinions reflect expert judgment based on a continuing observation of the

patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d

Cir. 2000); Plummer, 186 F.3d at 429.  In fact, treating physician's opinions are afforded

controlling weight if well-supported by diagnostic evidence and not inconsistent with other

medical evidence in the record, and it is an error of law to reject the treating physician's opinion

without adequate explanation. 20 C.F.R. §404.1527; Fargnoli v. Massanari, 247 F.3d 34, 43 (3d

Cir. 2001). "[G]reater weight should be given to the findings of a treating physician than to a

physician who has examined the claimant as a consultant." Adorno v. Shalala, 40 F.3d 43, 47 (3d

Cir. 1994).

Here, the ALJ gives *minimal weight* to the conclusions of Dr. Bell, arguing his purported

objectivity is undermined because he was an advocate for Plaintiff in his worker's compensation

litigation.[3]  He also assigns little weight to Bell's testimony that Somenski can not work because

---

[3]The ALJ also discounts Drs. Sadoff, Michals and Henderson's opinions for the same reason, claiming "their advocacy roles undermine the purported objectivity of their assessments." (R. at 19).

it "appear[s] to be based primarily on the claimant's subjective complaints." Instead, the ALJ affords "substantial weight" to the assessments of the state agency psychologists, who have greater familiarity with the Social Security disability requirements. (R. at 19).

  With the principles articulated by the Third Circuit in mind, the Court concludes the ALJ impermissibly discounted the treating physician rule.  The Court first takes issue with the ALJ's conclusion that Dr. Bell's credibility is undermined by testifying at a previous hearing for Plaintiff.  Bell was not hired as an expert; he is Somenski's *treating physician*.  Moreover, it is error to disregarded medical findings of examining physicians offered as part of a worker's compensation hearing even though it may be adversarial in nature, because this does not affect the reliability of the testimony. Coria v. Heckler, 750 F.2d 245, 248 (3d Cir. 1984).

  Second, although an ALJ may discount a treating physician's conclusions if they are inconsistent with other medical evidence in the record, Dr. Bell's assessment that Plaintiff has PTSD, severe anxiety and significant cognitive defects which preclude substantial gainful employment is amply supported by two psychiatrists and a psychologist: Drs. Sadoff, Slap, and Morris.  The ALJ's reason for discounting Dr. Sadoff's conclusion that Plaintiff has PTSD, anxiety and cognitive problems, including memory loss, and difficulty with concentration — that his objectivity is undermined by testifying at a previous hearing — is rejected.  This is because Sadoff was not an advocate for Plaintiff, but rather was hired by an adverse party, and further, an ALJ may not disregard medical findings of examining physicians merely because it was offered as part of a worker's compensation hearing, as stated *supra*. Coria, 750 F.2d at 248.  The ALJ does not even discuss his reasons for discounting the conclusions of Dr. Slap, arguably a neutral source from the Pennsylvania Bureau of Disability Determination, that among other

things, Plaintiff's concentration was "severely impaired," and he had "extreme" restrictions in

ability to remember, understand and carry out detailed instructions. (R. at 486-87). Further,

while the Commissioner correctly notes that state agency psychologists are considered "highly

qualified," it contravenes Third Circuit precedent to hold their opinions, when they didn't even

examine Plaintiff, above a treating physician who has treated Pl. for *almost ten years* (see *supra*

n.2). Fargnoli, 247 F.3d at 43; Morales, 225 F.3d at 317; Plummer, 186, F.3d at 429.

Finally, the ALJ discredits Dr. Bell's assessment that Plaintiff can not sustain substantial

gainful employment because it "appear[s] to be based primarily on the claimant's subjective

complaints." (R. at 19). This is inaccurate. Dr. Bell referred the Plaintiff out for detailed

neuropsychological testing by Dr. Morris in both 1995 and 1997 to support his diagnosis. This is

critical because Dr. Morris' undertook two detailed (two-day) evaluations, which the ALJ

explicitly "accepts as reliable" (R. at 19). The later evaluation concluded Plaintiff's

neuropsychological profile was "abnormal," evincing a noticeable decline in attention, memory

and thinking since the first evaluation, and that he had PTSD and/or anoxia. In fifteen cognitive

functions evaluated, she identified mild deficit in three and moderate dysfunction in seven.

Further, Dr. Morris noted that his "short term memory (retention) and sustained

attention/cognitive processing speed are continuing to present the patient with difficulties in daily

living," and that brain injury rehabilitation was recommended. (R. at 360-62). In sum, it is clear

Dr. Bell's opinion was not based on subjective complaints alone, but was informed by Dr.

Morris' objective, detailed assessment of Plaintiff's cognitive functioning. (R. at 229-233).

Thus, it was error for the ALJ to afford minimal weight to the conclusions of Dr. Bell when, as

his treating physician over a prolonged period of time, Bell's opinion that Plaintiff cannot sustain

-14-

substantial gainful employment should have been given great weight.  Morales, 225 F.3d at 317;

Plummer, 186 F.3d at 429.

> 2.    *The ALJ erred by failing to give deference to another ALJ's finding*

Plaintiff also argues that the ALJ's rejection of another agency's findings must be

supported by an explanation.  He contends the ALJ erred by failing to give any deference to ALJ

Romano's decision that Plaintiff was totally disabled without explaining why.  (Pl.'s Mot.

Summ. J. at 14-15, citing Lewis v. Califano, 616 F.2d 73, 76 (3d Cir. 1980)).  The Commissioner

counters that the Social Security Regulations explicitly state the decision of another agency is not

determinative of the question of whether or not an individual is disabled, and therefore the ALJ

was not required to follow the decision of ALJ Romano. (Resp.'s Mot. Summ. J. at 14).

While the Commissioner is correct that the regulations provide that disability

determinations made by other agencies are not binding on the Social Security Administration, 20

C.F.R. § 404.1504, the Third Circuit has held that a disability determination by another

government agency is entitled to substantial weight. See Kane v. Heckler, 776 F.2d 1130, 1135

(3d Cir.1985); Lewis, 616 F.2d at 76.  If the ALJ reaches a contrary conclusion, the ALJ must

offer an explanation of why he rejected the other agency's finding. Jones v. Barnhart, 2005 WL

2033383, *9 (E.D. Pa. Aug. 23, 2005) (Baylson, J.); Sell v. Barnhart, 2003 WL 22794702, *3

(E.D. Pa. Nov. 17, 2003).

Thus, even though ALJ Reddy's role requires him to make his own independent disability

determination, case law still requires that he afford ALJ Romano's disability determination

substantial weight and explain his reasons for rejecting it.  Here, ALJ Reddy did not specify what

amount of weight, if any, he accorded the ALJ Romano's decision nor did he explain his reasons

for rejecting it, beyond the fact that it was not binding.  Under controlling Third Circuit law, this was error.

> 3.      *The ALJ erred by discounting Plaintiff's subjective complaints*.

Plaintiff next argues that it was an abuse of discretion for the ALJ to discredit his subjective complaints related to his mental impairments, because they were amply supported by Dr. Bell, as well as Drs. Morris, Slap and Sadoff.  Further, in concluding Plaintiff had no exertional limitations, he errantly disregarded Somenski's accounts of pain, which were corroborated by the unrebutted opinions of the Commissioner's consultative examiners, Dr. Makous and Dr. Emmett.  (Pl.'s Mot. Summ. J. at 15-16).  The Commissioner argues that Somenski's subjective complaints regarding a mental incapacity were not amply supported by objective medical evidence.  Regarding any alleged physical impairment, the record's lack of evidence showing medical treatment, physical therapy or prescription pain medication gave the ALJ good reason to doubt the veracity of Plaintiff's alleged disabling physical subjective pain. (Resp.'s Mot. Summ. J. at 14-16).

An ALJ must consider a claimant's subjective symptoms, including pain, which may not be discounted if reasonably consistent with the objective medical evidence and other evidence in the record. Chrupcala v. Heckler, 829 F.2d 1269, 1275-76 (3d Cir. 1987); 20 C.F.R. § 404.1529. However, it is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. Plummer, 186 F.3d at 429; Mason v. Shalala, 99 F.2d 1058, 1066 (3d Cir. 1993).  Hence, an ALJ's credibility determinations are entitled to great deference and should not be discarded lightly, given his or her opportunity to observe an individual's demeanor. See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003).

In this case, the ALJ's determination that Plaintiff's complaints are "not fully credible" (R. at 21) simply is not supported by the record.  As discussed above, concerning Somenski's complaints about the severity of his mental impairments, the ALJ failed to accord Dr. Bell's opinion, which was supported by objective evidence and the opinions of Drs. Morris, Slap and Sadoff, sufficient weight.  Similarly, in discounting Somenski's testimony that he experiences pain in his lower extremities that limit his ability to lift, walk, stand, sit and manipulate things with his hands (R. at 56-57), the ALJ discounted the unrebutted medical opinions of Dr. Makous and Dr. Emmett.  Both concluded he had exertional limitations (albeit differing in extent of those limitations).  Although the ALJ discussed why he gave little weight to Dr. Makous' assessment supporting moderate limits on exertion, he made no mention whatsoever of Dr. Emmett's conclusion that Plaintiff was at least limited with respect to kneeling, crouching or climbing. Thus, in concluding Plaintiff has <u>no</u> exertional limitations, the ALJ erroneously supplanted the opinions of Somenski's unrebutted examining physicians with his personal speculation. <u>Morales</u>, 225 F.3d at 317.

4.   *<u>The ALJ's Hypothetical Question to the Vocational Expert Did Not Properly Account for All of the Plaintiff's Functional Limitations</u>*

At the fifth and final step of the analysis, Plaintiff challenges the sufficiency of the ALJ's hypothetical to the VE.  He asserts the ALJ did not account for the severity of his mental impairments nor include any accommodations for the exertional limitations stemming from the injuries to his lower extremities. (Pl.'s Mot. Summ. J. at 16).  Defendant contends that because Plaintiff failed to meet his burden that his psychological and/or physical ailments limited his ability to do basic work activities, the hypothetical was sufficient. (Resp.'s Mot. Summ. J. at 16).

Testimony of a VE constitutes substantial evidence for purposes of judicial review only

where the hypothetical question posed by the ALJ fairly encompasses *all* of an individual's

significant limitations that are supported by the record. <u>Ramirez</u>, 372 F.3d at 552; <u>Chrupcala</u>, 829

F.2d at 1276.  Further, "great specificity" is required when an ALJ incorporates a claimant's

limitations into a hypothetical.  <u>Ramirez</u>, 372 F.3d at 554-55 (citing <u>Burns v. Barnhart</u>, 312 F.3d

113, 122 (3d Cir. 2002)).

> As discussed at length *supra*, the Court found the record amply supports that Plaintiff has

debilitating psychological impairments and cognitive deficits that preclude performing

substantial gainful employment.  While the hypothetical[4] incorporates some accommodations, it

neither takes into account the severity of Somenski's psychological problems nor reflects any

exertional limitations.  Thus, the Court finds the VE's opinion deficient because the ALJ's

hypothetical question did not reflect all of Plaintiff's functional limitations which were supported

by the record.  Therefore, the ALJ's conclusion that the Plaintiff is capable of performing certain

jobs existing in significant numbers in the national economy was not based on substantial

evidence.

---

[4]The question was: "I'd like you to assume a hypothetical individual who has this
Claimant's age of 53 and the Claimant's high school education and work experience.  In
addition, the hypothetical individual doesn't have any exertional limitations, but the hypothetical
individual has a moderate limitation in their ability to understand, remember, and carry out
detailed instructions, a moderate limitation in their ability to maintain attention and concentration
for extended periods, a moderate limitation in their ability to respond appropriately to changes in
the work setting, and moderate limitation in their ability to travel in unfamiliar places, or use
public transportation.  In addition, before I go any further, I'd like to define for you that
moderate, in reference to the mental limitations, means that the ability to function in the
particular area is limited, but it's still satisfactory.  Now in addition, this hypothetical individual
would require, would be restricted to doing simple repetitive work.  On the basis of said
assumptions, in your opinion. . . . [w]ould there be unskilled occupations this hypothetical
individual would be expected to be able to perform?"  (R. at 64-65).

C.   Remedy

The remaining question is whether to remand this case to the Commissioner for further administrative proceedings or to award disability benefits now.  The Third Circuit "has noted . . . [its] frustration with the delays in disability determinations by the Social Security Administration." Plummer, 186 F.3d at 435 (lamenting six years had passed since claimant originally filed for benefits).  However, the decision to award benefits should only be made "when the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." Morales, 225 F.3d at 320, citing Podedworny v. Harris, 745 F.2d 210, 222 (3d Cir. 1984).

In this case, Somenski applied for benefits more than eight years ago and the record is unlikely to change.  Moreover, this extensive delay certainly can not be attributed to Plaintiff, who timely sought review of his initial hearing more than seven years ago, only to have his file lost for upwards of four years by the Social Security Administration.  Additionally, the extensive medical record, which includes opinions and objective evidence from Drs. Bell, Sadoff, Morris, Slap, Makous, and Emmett, as well as ALJ Romano's decision, together with Somenski's testimony, constitutes substantial evidence that he is precluded from engaging in substantial gainful activity. Morales, 225 F.3d at 320.  In short, we are satisfied he was "disabled" under the Act before June 30, 2002, his date last insured.  Accordingly, we will order the Commissioner to award Somenski the benefits to which he is entitled from September 24, 1994.

**V.    Conclusion**

For the foregoing reasons, this Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's Motion for Summary Judgment will

be denied and Plaintiff's Motion for Summary Judgment will be will be granted.  Moreover, as we are satisfied that the record supports a finding that Somenski was "disabled" under the Act before June 30, 2002, his date last insured, we therefore order the Commissioner to award Somenski the benefits to which he is entitled from September 24, 1994.

An appropriate Order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANCES SOMENSKI                          :
                                          :
        Plaintiff,                        :
                                          :        CIVIL ACTION
        v.                                :
                                          :
JO ANNE B. BARNHART, Commissioner         :        NO. 05-3545
    of the Social Security Administration,:
                                          :
        Respondent                        :

## <u>ORDER</u>

AND NOW, this       day of February, 2006, after careful and independent consideration

of the parties' cross-motions for summary judgment, and review of the record, it is hereby

ORDERED that:

1.  The Plaintiff's Motion for Summary Judgment (Doc. No. 8) is
    GRANTED;

2.  The Commissioner's Motion for Summary Judgment (Doc. No. 9) is
    DENIED;

3.  Judgment will be entered in favor of Plaintiff and against Defendant;

4.  The Commissioner shall award Plaintiff the benefits to which he is entitled
    from September 24, 1994.

5.  The Clerk shall mark this case CLOSED.

                              **BY THE COURT:**


                              /s/ Michael M. Baylson
                              _____

                              **MICHAEL M. BAYLSON, U.S.D.J.**